# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TINA RENAY PYEATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-2001 NAB |
| ) | |
| ANDREW M. SAUL[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Tina Pyeatt's appeal regarding the denial of disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 11.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand this action.

### Issues for Review

Pyeatt presents two issues for review. First, she contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence in the record as a whole, because the ALJ improperly gave no weight to the opinion of her treating physician and then "played doctor"

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

to create the RFC.  Second, she contends that this action should be remanded because her case was adjudicated by an improper and unconstitutionally appointed administrative law judge ("ALJ").  The Commissioner responds that Pyeatt's failure to assert a challenge to the ALJ's appointment during the administrative proceedings forfeits her ability to assert this claim in the first instance at the district court.  The Commissioner also states that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1).  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant meets this burden, the analysis

proceeds to step five.  At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy.  *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000).  If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994).  The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).  The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently.  *Id.*  If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole.  *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**Discussion**

Pyeatt filed her application for disability insurance benefits asserting disability due to degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), arthritis, tendonitis, bursitis, carpal tunnel syndrome, and dizziness caused by sinus trouble.  (Tr. 156.)  After her claim was denied at the initial level, she requested and received an administrative hearing before an ALJ.

(Tr. 29-55, 73-74, 121-26.) Pyeatt and vocational expert Brenda Young testified at the administrative hearing. (Tr. 33-54.)

The ALJ then issued a decision denying Pyeatt's claims for disability insurance benefits. (Tr. 10- 22.) The ALJ found that Pyeatt had the following severe impairments: degenerative disc disease, osteoarthritis, fibromyalgia, degenerative joint disease of the shoulders, bilateral carpal tunnel and cubital tunnel syndrome, degenerative joint disease of the knees, obesity, and chronic bronchitis due to smoking. (Tr. 12-13.) He found that her medically determinable impairments of hypertension, gastroesophageal reflux disease ("GERD"), cholecystitis/cholecystectomy, headaches, insomnia, sinusitis/upper respiratory infection, left Dequervain's tenosynovitis, irritable bowel syndrome with constipation and diarrhea, anxiety, and an adenomatous colon polyp are non-severe. (Tr. 14.)

The ALJ found that she did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that Pyeatt had the RFC to perform light work, with the following additional limitations: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit 6 hours in an 8 hour work day; cannot reach overhead; frequently reach in all other directions; frequently handle and finger; cannot tolerate whole body vibration; cannot use vibrating hand tools; cannot climb ladders, ropes, or scaffolds; occasionally balance, kneel, crouch, crawl, stoop, or climb ramp/stairs; cannot push or pull leg levers due to degenerative joint disease of the knees but can operate foot pedals without limitation; cannot tolerate concentrated exposure to pulmonary irritants defined as no work in an environment with exposure to airborne particles from activities such as grinding or sanding processes; and cannot work around unventilated noxious fumes. (Tr. 14.)

4

Based on the RFC, the ALJ found that Pyeatt was capable of performing her past relevant work as a cashier, area supervisor, and janitor. (Tr. 20.) Therefore, the ALJ concluded that Pyeatt had not been under a disability, as defined in the Social Security Act, from December 10, 2015 through April 2, 2018, the date of decision. (Tr. 22.)

**RFC Determination**

First, Pyeatt contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ gave no weight to the opinion of her treating physician, Dr. Erik Calmet[2]. Because of the ALJ's rejection of Dr. Calmet's opinion evidence, Pyeatt also states there is not enough evidence in the remaining record to support the ALJ's RFC assessment.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her

---

[2] Dr. Erik Calmet is also listed in the record as Dr. Erik Calmet Del Santillo. The Court will refer to him as Dr. Calmet, because he used Eric Calmet as his signature.

[3] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

impairments and her physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2)[4]. All medical opinions, whether by treating or consultative examiners, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted). The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ

---

[4] Several Social Security regulations were changed effective March 27, 2017. The Court will use the regulations effective at the time that this claim was filed in 2015.

6

to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

Dr. Calment treated Pyeatt for bronchitis, back pain, COPD, shoulder pain, partially torn rotator cuff, epigastric pain, palpitations, and near syncope. He began treating Pyeatt, as her primary care physician, in 2015. During the time that Dr. Calmet treated Pyeatt, she also received treatment from several specialists, including having surgeries on her hands and back.

On March 28, 2016, Dr. Calmet completed a physical assessment for Pyeatt. (Tr. 303-304.) He described her diagnoses as chronic pain of both shoulders, chronic back pain, COPD, and generalized osteoarthritis. (Tr. 303.) He indicated that her impairments were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks. He wrote that her medication Oxycodone produced side effects that may impact her capacity for work. He indicated that she would need to recline or lie down during an 8-hour workday in excess of the typical 15, 30, or 60 minute breaks. He labeled her functional limitations in a competitive work environment on a sustained basis as severe. Dr. Calmet opined that she could walk less than 1 block, sit 1 hour, and stand or walk 0 hours during an 8 hour workday. He opined that she would have to take unscheduled breaks lasting 30 minutes every 30-60 minutes. He opined that she is unable to lift or carry less than 10 pounds. He found that she could not reach with either hand, but she could grip 20% of the time with either hand and perform fine manipulation 50% of the time with either hand. He opined that she would likely be absent from work more than four times per month as a result of her impairments and treatment.

The ALJ gave no weight to Dr. Calmet's opinion. He provided several reasons for the weight given. First, the ALJ noted that Dr. Calmet's statement was written only 2 months after Pyeatt had undergone her L5-S1 fusion and 4 months after shoulder surgery, which according to

7

the ALJ revolved mainly around her degenerative disc disease and shoulder issues. The ALJ also noted that the limitations contained in Dr. Calmet's opinion were contradicted by Pyeatt's activities of daily living, including lifting laundry that weighed more than 10 pounds, completing housework for at least 3 hours per day, and lack of radiculopathy since her back surgery. The ALJ noted that that the treating specialists never gave Pyeatt the limitations contained in Dr. Calment's opinion. Finally, the ALJ determined that there was no medical basis to support Dr. Calmet's opinion that Pyeatt would be absent from work 4 or more days per month.

After a review of the evidence in the record as a whole and the arguments presented by the parties, the Court finds that there is not substantial evidence in the record to support the ALJ's RFC determination and this action should be remanded for further proceedings. While the ALJ's evaluation of Dr. Calmet's opinion may be supported by substantial evidence, the ALJ's RFC determination is not. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same). "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2001)). If the medical record is adequately developed, the ALJ is not required to seek additional information or order a consultative examination. *Hensley*, 829 F.3d at 932 (citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016)).

This case is one where a consultative examination would help in developing a complete RFC. The ALJ has a duty to fully and fairly develop the evidentiary record. *Byes v. Astrue*, 687 F.3d 913, 916-16 (8th Cir. 2012) (citing *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir.2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.")). Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work. *Id.* at 916 (citing *Cox v. Apfel,* 160 F.3d 1203, 1209–10 (8th Cir.1998)). The RFC includes all of the information in the administrative record, including information regarding a claimant's activities of daily living. The ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). This is not a case where the claimant has had conservative medical intervention or is taking over the counter medication for mild pain. Her activities of daily living, as described, do not indicate the ability to perform work activities on a regular and continuing basis. Working in her garden for 3 hours per day with her husband's assistance and doing laundry is not comparable to the performance of her past relevant work eight hours a day, five days per week.

The ALJ improperly relied on his own inferences of the medical record to form the RFC determination. *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (ALJ erred in relying on his own inferences about what claimant's medical providers' notes meant). Although Pyeatt's medical providers consistently note in their treatment records that she has a normal range of motion, they likewise consistently diagnose her with significant impairments, prescribe narcotic

9

medication, and note she has pain with movement. *Id.* Further, the ALJ speculated about how the surgeries affect Pyeatt's present functional ability. The ALJ's reliance on his interpretation of the providers' treatment notes and the results of Pyeatt's surgeries requires remand. Upon remand, the ALJ should obtain a consultative examination to help determine Pyeatt's RFC. Then, the ALJ should produce a new RFC determination.

**Appointments Clause Challenge**

Next, Pyeatt alleges that the ALJ who presided over her administrative hearing was not constitutionally appointed consistent with the Appointments Clause of the Constitution; therefore, her case must be remanded for a new hearing. The Commissioner contends that Pyeatt's failure to bring this challenge at the administrative level defeats her claim. The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, ... the Courts of Law, or ... the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. In *Lucia v. Securities and Exchange Commission*, the Supreme Court held that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause. 138 S.Ct. 2044 (2018). Pyeatt argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that her case should be remanded for a new hearing before a constitutionally appointed ALJ. The Eighth Circuit has not ruled on the application of *Lucia* to the appointment of ALJs by SSA or whether a claimant is required to challenge the appointments issue at the administrative level. Because the Court is reversing and remanding his action and Pyeatt will proceed with a new administrative review, Pyeatt's argument regarding this issue is moot. *See Barker v. Saul*, No. 19-03105-CV-S-ODS, 2019 WL 6131454 at

\*4 (W.D. Mo. Nov. 19, 2019) (Court's reversal and remand on substantive grounds moots argument requesting remand based on Appointments Clause).

## Conclusion

The Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole.  The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance.  *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at \*11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief Plaintiff seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**.  [Docs. 1, 14, 22.]

**IT IS FURTHER ORDERED** that the ALJ's decision of April 2, 2018 is **REVERSED** and **REMANDED**.  The ALJ shall obtain a consultative examination that addresses

**IT IS FURTHER ORDERED** that the Clerk of the Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record in this case.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2020.